UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOROTHEA M. ASHBERY,

        Plaintiff,

  v.              **DECISION AND ORDER**
                     05-CV-888S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

    1.  In this case, Plaintiff Dorothea M. Ashbery challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since April 10, 1996, due to mental and emotional instability.  Plaintiff contends that her impairments have rendered her unable to work.  She therefore asserts that she is entitled to payment of disability benefits under the Act.

    2.  Plaintiff protectively filed an application for disability insurance benefits on February 2, 1998.  Her application was denied initially and upon reconsideration.  At Plaintiff's request, an administrative hearing was held before an ALJ on August 16, 1999.  The ALJ issued a decision denying Plaintiff's application on November 12, 1999.  The Appeals Counsel denied her request for review on June 12, 2002, and a district court action followed.  Thereafter, the parties stipulated to remand the case for further proceedings before the Commissioner.  Plaintiff and her attorney attended a supplemental hearing before ALJ Timothy McGuan on February 10, 2004.  On March 22, 2004, the ALJ issued a decision denying Plaintiff's application.  The Appeals Council again remanded the case for further proceedings on March 5, 2005.  On June 23, 2005, ALJ McGuan held a supplemental hearing at which Plaintiff and her attorney appeared and an impartial vocational expert testified.  The ALJ considered the case, and on July 5, 2005, issued a

decision denying Plaintiff's application for benefits.  On October 29, 2005, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed the current civil action on December 22, 2005, challenging Defendant's final decision.[1]

3.	On September 27, 2006, Plaintiff and Defendant filed Cross Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion seeking the same is denied.

4.	A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.	"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the

---

[1] The ALJ's July 5, 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with respect to the five-step process set forth above: (1) Plaintiff has engaged in substantial gainful activity since the alleged onset of her disability (R. at 430);[2] (2) Plaintiff's carpal tunnel syndrome and depression constitute "severe" impairments (R. at 430); (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations (R. at 430); (4) Plaintiff retains the residual functional capacity to lift and carry up to twenty pounds occasionally and 10 pounds frequently, to sit for up to six hours per day, to stand or walk up to six hours per day, to occasionally understand, remember and carry out complex and detailed tasks, to frequently interact with the public and with co-workers, and to occasionally finger, handle, push, and pull (R. at 430); and (5) Plaintiff was unable to perform any of her past relevant work. (R. at 430). Considering Plaintiff's status as a younger individual, with more than a high school education, with no transferable skills from her past work, and a residual functional capacity to perform a significant range of light

---

[2] Citations to the underlying administrative record are designated as "R."

work, the ALJ determined based on the Medical-Vocational Guidelines and the testimony of a vocational expert that there are a number of jobs in the national economy that Plaintiff could perform. (R. at 430-31). Ultimately, the ALJ determined that Plaintiff was not under a disability as defined by the Act at any time through the date of his decision, July 5, 2005.

10. Plaintiff contends that the ALJ improperly rejected the opinions of Thomas Dickinson, Ph.D., and Daniel J. Willis, M.D., the only two doctors who examined her relative to her mental condition. Drs. Dickinson and Willis opined that Plaintiff was not capable of engaging in substantial gainful activity. For example, Dr. Dickinson noted on June 2, 1998, that Plaintiff was incapable due to her depression and tension to handle typical work pressures, (R. at 337) and Dr. Willis opined that Plaintiff's psychiatric symptomology rendered her unable to work between April 1996 and September 1998. (R. at 576). In his decision, the ALJ declined to give significant weight to Dr. Dickinson's assessment because it was "contradictory" and based on a single examination. (R. at 425). With respect to Dr. Willis' opinion, the ALJ found that it was "grossly inconsistent" with the doctor's own treatment notes. Plaintiff contends that the ALJ violated the "treating physician's rule" by failing to afford proper weight to her doctors' opinions that she was disabled.[3]

11. According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v.

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Chater, 221 F.3d 126, 134 (2d Cir. 2000). Having reviewed the entire record, this Court detects no reversible error in the ALJ's treatment of Drs. Dickinson and Willis' conclusions.

With respect to Dr. Dickinson's opinion that Plaintiff could not handle work pressure, the record reflects that it is inconsistent with Plaintiff's subjective statements and with the doctor's other findings as set forth in his June 2, 1998 letter. At her examination on that date, Plaintiff indicated that she did not suffer from delusions, hallucinations, compulsions, social fears, lack of friends, suspiciousness, or troubles with sleep, nightmares or controlling her temper. (R. at 336). She advised Dr. Dickinson that she had friends, a new boyfriend, and social interests. (R. at 336). Moreover, Plaintiff felt that she could work, and rated her judgment, memory, and financial capability all as good. (R. at 337).

During Plaintiff's examination, Dr. Dickinson noted that she became tearful when she spoke of the difficult time she had working at the local Ford plant. (R. at 336-37). He found, however, that Plaintiff was alert, pleasant, talkative, and attentive. (R. at 337). Based on testing, Dr. Dickinson rated Plaintiff's orientation as good, her concentration level as fair to good, her insight into problems as fair, her reading skills at a high tenth grade level, and her intellectual level as high average. (R. at 337). He opined that Plaintiff suffered from depression to a moderate degree, but was intellectually capable of handling appropriate supervisory comments, dealing with co-workers, and handling typical work pressures. (R. at 337).

Having reviewed Dr. Dickinson's June 2, 1998 letter in its entirety, this Court finds that it does not compel the conclusion that Plaintiff was incapable of working. Rather, as the ALJ found, Dr. Dickinson's various assessments actually contradicted his conclusion

that Plaintiff could not carry out her work duties because of her depression.[4]  Further, although Plaintiff became tearful when she spoke of working at the Ford plant, she indicated that, as a general matter, she was capable of working.  Under the circumstances, it was appropriate for the ALJ, as the trier of fact, to weigh all of the evidence and resolve any material conflicts in that evidence.  See Richardson, 402 U.S. at 399.

With respect to Dr. Wills' opinion that Plaintiff was unable to work between April 1996 and September 1998, this Court agrees that it is unsupported by his treatment notes, as the ALJ concluded.  Contrary to his finding of disability, Dr. Willis' treatment notes reflect that for the most part, Plaintiff's mental condition was improving during the relevant time period.  For example, on April 30, 1996, Plaintiff reported that she was "feeling better," was calmer, demonstrated an appropriate affect, and did not exhibit any signs of lethality, psychosis, or paranoia.  (R. at 216).  On May 15, 1996, Plaintiff indicated that Klonopin decreased her anxiety.  (R. at 215).  She was calmer and less depressed on May 29, 1996, and reported that she "picked up a lot of positive vibes" during her vacation to Colombus, Ohio, where she attended a rabbit show.  (R. at 215).  On June 12, 1996, Plaintiff was less depressed and indicated that she was fine when not working at the Ford plant.  (R. at 214).  On August 1, 1996, she told Dr. Willis "I'm sure its Ford."  (R. at 214). Plaintiff reported feeling "pretty good" on September 26, 1996, and appeared less depressed.  (R. at 213).  Likewise, on October 28, 1996, she said she was "doing well," and demonstrated an appropriate affect and less depressed mood with no lethality, psychosis, or paranoia.  (R. at 212).

---

[4]In any case, the ALJ was not obligated to give any particular weight to the opinion of Dr. Dickinson, who examined Plaintiff only once.  See 20 C.F.R. § 404.1527(d).

On March 27, 1997, Dr. Willis reported that she was "doing well," had no new problems, and exhibited an appropriate affect and a neutral mood with no lethality and no psychosis. (R. at 365). Nonetheless, he opined that Plaintiff was disabled. (R. at 365). Thereafter, in July of 1997, Plaintiff reported that she was doing pretty well, and that her sleep and appetite were fine. (R. at 363). On that date, Dr. Willis noted, her affect was calmer and her mood less depressed. (R. at 363). On September 24, 1997, and October 21, 1997, Plaintiff appeared to be in a less depressed mood than she was at her prior session. (R. at 363, 362). On December 2, 1997, she reported that she was fine, and was not suffering from disruptions in her sleep or appetite. (R. at 361). Moreover, she had a calm, appropriate affect and a neutral, much less depressed mood. (R. at 361). In February and March of 1998, Plaintiff reported that she was "fine" or "doing well" and exhibited an appropriate affect and neutral mood with no indicia of lethality, psychosis, or paranoia. (R. at 360). Despite being unhappy about her failure to find a job, Plaintiff reported on April 13, 1998, and August 1, 1998, that she was fine and had no problems sleeping. (R. at 359-58). Having reviewed Dr. Willis' treatment notes and clinical observations in their entirety, this Court agrees with the ALJ that they are "grossly inconsistent" with his conclusion that Plaintiff was mentally disabled between April 1996 and September 1998. (R. at 427).

In any case, the ALJ was not obligated to adopt Dr. Willis' conclusory opinion that Plaintiff was unable to work during the relevant time period.[5] It is well established that a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine that the claimant is disabled within

---

[5] Nor was the ALJ required to obtain the opinion of a medical expert to determine Plaintiff's residual functional capacity, as she contends. The decision to call a medical expert to testify is discretionary and rests with the ALJ. See 20 C.F.R. § 404.1527(f)(2)(iii).

the meaning of the Act. See 20 C.F.R. § 404.1527(e) (stating that certain findings, including the ultimate finding of whether a claimant is disabled, are reserved to the Commissioner). Under the circumstances, it cannot be said that the ALJ arbitrarily substituted his own judgment for that of the treating physician. Rather, the ALJ appropriately rejected Drs. Dickinson and Willis' conclusions in favor of the objective medical evidence in the record. For the foregoing reasons, this Court finds that the ALJ's treatment of Drs. Dickinson and Willis' opinions regarding her ability to work was appropriate.

12. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions based on that evidence. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act.[6] Finding no reversible error in the ALJ's decision and further finding that his decision is supported by substantial evidence, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

---

[6] Because Plaintiff is not disabled within the meaning of the Act, she is not entitled to benefits during her alleged trial work period between December 1998 and August 1999.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: March 4, 2007
       Buffalo, New York

                                              <u>/s/William M. Skretny</u>
                                              WILLIAM M. SKRETNY
                                           United States District Judge